# United States Court of Federal Claims

No. 12-683 C
(Filed Under Seal:  February 27, 2014)
(Reissued: March 14, 2014)[*]

---

MANAGEMENT AND TRAINING
CORPORATION,

*Plaintiff,*

v.

THE UNITED STATES OF AMERICA,

*Defendant.*

---

RCFC 12(b)(1);  Jurisdiction to review Agency set-aside decision; Pre-award bid protest; Set-asides under the Workforce Investment Act, 29 U.S.C. § 2887(a)(2)(A); "Predicate determination" and the Rule of Two; RCFC 12(b)(1)

*G. Lindsay Simmons*, Jackson Kelly PLLC, Washington, DC, for plaintiff.

*Michael D. Snyder, Won K. Lee*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, with whom were David R. Koeppel, Peter J. Dickson, Agency Counsel, United States Department of Labor, Washington, DC, for defendant.

## OPINION *and* ORDER

**Block,** *Judge.*

In this pre-award, pre-solicitation bid protest, plaintiff Management & Training Corp. ("Management") challenges the decision by the Department of Labor's ("DOL") Employment and Training Administration ("ETA") to designate the contract for the operation of the Paul Simon Job Corps Center ("Paul Simon JCC") as a small business set aside. Because plaintiff, according to the agency, could not be considered a small business under applicable law, it was precluded from competing for a new contract to operate the job center.

This court, on April 25, 2013, granted in part and denied in part plaintiff's motion to complete and supplement the administrative record. Presently, before the court are the parties' motions for judgment on the administrative record pursuant to Rule 52.1(b) of the Rules of the Court of Federal Claims ("RCFC") and plaintiff's motion for permanent injunctive relief pursuant to RCFC Rule 65. Additionally, defendant has moved to dismiss this case as non-justiciable pursuant to RCFC Rule 12(b)(1). For the reasons set forth below, the court denies defendant's motion to dismiss for lack of jurisdiction but grants defendant's cross-motion for judgment on the administrative record. Conversely then, the court denies plaintiff's cross-motion for judgment on the administrative record and motion for a permanent injunction.

---

[*] This opinion originally was issued under seal on February 27, 2014.  The court afforded the parties an opportunity to propose redactions in the opinion prior to its reissue, but no such redactions were proffered.  The opinion is herewith reissued.

# I. BACKGROUND

## A. The Decision To Set Aside the Procurement of the Paul Simon Job Corps Center

This case involves the propriety of a small business set-aside used in the procurement for the operation of a Job Corps center ("JCC"). The Job Corps program is the nation's largest career technical training and education initiative for poor and at-risk youths and currently serves more than 60,000 students annually at 125 centers nationwide. Compl. ¶ 21. It is administered by the Department of Labor Employment and Training Administration and is governed in part by the Workforce Investment Act of 1998 ("WIA"), Pub. L. No. 105-220, 112 Stat. 936, which sets forth a framework for selecting JCC operators.[1] Plaintiff Management & Training Corp. is a privately-held corporation that has been in the business of managing and operating Job Corps Centers for 32 years. Compl. ¶ 13. Plaintiff, the incumbent operator of the Paul Simon JCC, currently operates 18 Job Corps Centers throughout the United States. *Id.*

On April 26, 2012, ETA issued a Request for Information ("RFI") with a view towards conducting procurements for multiple JCCs, including the Paul Simon JCC.[2] Tab 1, AR 1-7. The RFI specifically noted that ETA reserved the right to set aside each procurement covered by the RFI for small business competition depending upon what concerns responded to the RFI. Tab 1, AR 3. In that vein, the RFI emphasized that "ALL QUALIFIED SMALL BUSINESSES . . . ARE ENCOURAGED TO PARTICIPATE" in responding to the RFI. *Id.*

The RFI directed all contractors interested in operating one of the listed JCCs to file "capability statements" indicating which JCC or JCCs they were interested in operating, as well as their ability to operate a JCC in light of twelve "capability requirements." Tab 1, AR 3-4. These requirements were as follows:

1. Experience providing a comprehensive academic and career technical training program.

2. Experience providing food services, medical, dental, and medical health care.

3. Experience managing and ensuring data integrity.

---

[1] The Job Corps program was originally established by the Economic Opportunity Act of 1964, and was reauthorized by the Comprehensive Employment Training Act of 1973, followed by the Job Training Partnership Act of 1982, and most recently the Workforce Investment Act of 1998. Job Corps Program Description, 2008 Job Corps Annual Report, http://www.doleta.gov/grants/rfp/jobCorpsJobDescr.pdf, at 1. The WIA sought to address the proliferation of Job Corps programs, which by 1997 were scattered across 15 different federal agencies, and rationalize the ever-expanding Job Corps program by developing a comprehensive framework and improving coordination with the states and local business communities. See S. Rep. No. 105-109, 105th Congr., 1st Sess. (1997), 1997 WL 644606, at 1-3.

[2] The other JCCs covered by the RFI were (1) the Montgomery JCC in Montgomery, Alabama, (2) the Dr. Benjamin L. Hooks JCC in Memphis, Tennessee, (3) the Detroit JCC in Detroit, Michigan, (4) the Joilet JCC in Joilet, Illinois, (5) the Earl C. Clements JCC in Morganville, Kentucky, and (6) the Little Rock JCC in Little Rock, Arkansas. Tab 1, AR 6-7.

4.   Experience protecting Personally Identifiable Information, whether on paper in electronic form or communicated orally.  In accordance with the Privacy Act of 1974, as amended.  [sic]

5.  Experience with facility and construction management.

6.  Experience providing property management.

7.  Experience providing residential management, residential supervision, and meals.

8.   Experience operating a program that is integrated with the local workforce development systems, employers and the business community.

9.   Experience operating a job training program that reflects the local labor market conditions of the place of contract performance.

10.   Experience operating a job training program that is reflective of the workforce investment plans of the state where the program is located and experience taking part in the local workforce investment system of the program's local.  [sic]

11.   Access to financial resources sufficient to satisfy requirements of operating a JCC operation for the first 45 days of operation or the ability to obtain them, e.g., a seven-figure bank line of credit, evidence of a positive cash flow, etc.

12.  Experience with the financial management of a cost reimbursement type contract.

AR Tab 1 at 4-5.  To be sure, the RFI left no uncertainty as to the importance of these capability requirements:  "FOR A CONTRACTOR TO BE DEEMED CAPABLE, THE CONTRACTOR MUST BE FOUND CAPABLE IN ALL 12 REQUIREMENTS."  *Id.*

ETA received "capability statements" expressing interest in operating the Paul Simon JCC from four small business concerns—Chugach Education Services, Inc. (CESI), Education Management Corporation (EMC), Human Learning Systems, LLC (HLS), and Odle Management (ODLE).  Tab 6, AR 42.  All of them, except for HLS, attempted to explain how they complied with each of the twelve capability requirements.  *Id.*  While the capability statements are long and detailed, suffice it to say that CESI, EMC, and ODLE relied heavily on their past experiences operating JCCs in demonstrating that they meet each of the twelve capability requirements. Tabs 2-5, AR 8-38.

DOL's Office of Contracts Management ("OCM") reviewed the responses from small businesses to ETA's RFI and determined that the "Rule of Two" analysis required by FAR 19.502-2(b) was properly done.  Tab 6, AR 41-59.  This section of the Federal Acquisition Regulations ("FAR") requires a set-aside if the contracting officer finds (1) that there is a reasonable expectation of receiving bids from at least two responsible small business concerns, and (2) that award can be made to a small business concern at fair market price.  48 C.F.R. (FAR) 19.502-2(b).

In a memorandum dated September 25, 2012, contracting officer Jillian Matz, the Division Chief for the Division of Job Corps Procurement in OCM, noted that ETA had received capability statements from four small business concerns expressing interest in operating the Paul Simon JCC, and reported that three of them—CESI, EMC, and ODLE—had been found

"capable" by OCM.   Tab 6, AR 41-43.   Citing FAR 19.502-2(b), the contracting officer "determine[d] that this procurement should be conducted as a total small business set-aside." Matz justified this determination by stating that CESI, EMC, and ODLE "are capable under all of the capability factors identified in the RFI," and have, in the past, been awarded JCC contracts at fair market price.  Tab 6, AR 42-44.

On October 1, 2012, ETA posted a "Presolicitation Notice" on FedBizOpps,[3] stating that ETA had decided to conduct the procurement of the new Paul Simon Job Center as a complete small business set-aside.  Tab 7, AR 60.  The Presolicitation Notice contained a statement that the applicable North American Industry Classification System ("NAICS") Code[4] for the proposed procurement was 611519, which includes businesses with annual receipts under $35.5 million.  Tab 1, AR 3.  The Presolicitation Notice also specified that the contract would be for a two-year base period, from August 1, 2013 through July 31, 2015, with three 12-month performance extension options, exercisable at ETA's discretion.  Tab 7, AR 60.  Management alleges that it is not a small business under NAICS 611519 and that the Presolicitation Notice, accordingly, precluded it from competing to continue operating the Paul Simon JCC.  Compl. ¶ 3.

Shortly afterward, on October 10, 2012, plaintiff filed the instant bid protest challenging the set-aside decision.  The parties cross-moved for judgment on the administrative record, and defendant moved to dismiss for lack of jurisdiction on standing and ripeness grounds, arguing in the main that plaintiff had not yet suffered a cognizable injury because no solicitation had been issued.

**B. Plaintiff's Protest**

In its complaint and cross-motion, plaintiff alleges three specific errors.

First and foremost, plaintiff alleges that setting aside JCC procurement awards violates Section 147(a)(2)(A) of the Workforce Investment Act of 1998 (WIA), Pub. L. No. 105-220, 112 Stat. 936, as amended and codified at 29 U.S.C. § 2887(a)(2)(A).  Compl. ¶ 5, 91-99.  In pertinent part, that statute provides that subject to certain exceptions, "the Secretary [of Labor] shall select *on a competitive basis* an entity to operate a Job Corps center and entities to provide activities . . . to the Job Corps center."  29 U.S.C. § 2887(a)(2)(A) (emphasis added).  The parties disagree as to whether the use of a small business set-aside is consistent with the statutory requirement that JCC operators be selected on a "competitive basis."  Compl. ¶¶ 5, 26; *c.f.* Defendant's Motion to Dismiss and Cross-Motion for Judgment on the Administrative Record ("Mot. Dismiss & Cross-Mot.") at 20-25**.**

---

[3] FeBizOpps (http://www.fedbizopps.gov.) is a government internet-based service that provides a single portal where federal government procurement opportunities with contract prices over $25,000 are published.  *See* FAR 2.101 and 5.102.

[4] "The North American Industry Classification System (NAICS) is the standard used by Federal statistical agencies in classifying business establishments for the purpose of collecting, analyzing, and publishing statistical data related to the U.S. business economy."  *See* United States Census Bureau, Introduction to NAICS, at http://www.census.gov/eos/www/naics/.

Second, plaintiff alleges that the set-aside decision in this case is arbitrary and capricious because the contracting officer did not make a "predicate determination" as to whether a set-aside would be in the interest of assuring that a "fair proportion" of JCC contracts go to small businesses. Compl. ¶ 6, 100-113. More specifically, the parties disagree as to whether 15 U.S.C. § 644(a) and FAR 19.502-1a(2), which authorize set-asides when in the interest of assuring that a "fair proportion" of government contracts are awarded to small business concerns, require the contracting officer to make such a predicate determination. Compl. ¶¶ 6, 27; *c.f.* Mot. Dismiss & Cross-Mot at 28-32**.**

Third, plaintiff alleges that the set-aside decision was arbitrary and capricious because the contracting officer failed to consider relevant factors in applying the so-called "Rule of Two," which authorizes a set-aside if the contracting officer has a "reasonable expectation" of receiving bids from at least two "responsible" small business concerns. Compl. ¶ 7, 114-131. Specifically, the parties disagree as to whether the contracting officer improperly failed to consider the compliance of the small business concerns with four statutory criteria set forth in 29 U.S.C. § 2887(a)(2)(B)(i),[5] which the Secretary of Labor must ultimately consider in awarding a contract to operate a JCC. Compl. ¶¶ 7-8, 115-21; *c.f.* Mot. Dismiss & Cross-Mot. at 25-27. The parties also disagree as to whether the contracting officer improperly failed to consider various non-statutory factors as part of the Rule of Two determination, including the small business concerns' (1) higher indirect rates, (2) past performance problems, (3) ability to operate multiple centers concurrently, and (4) lack of a federally approved purchasing system and written procurement policies to manage the Paul Simon JCC pursuant to the proposed cost-reimbursement contract. Compl. ¶ 8; *c.f.* Mot. Dismiss & Cross-Mot. at 34-37

As mentioned above, defendant also moves to dismiss for lack of jurisdiction on ripeness and standing grounds. Mot. Dismiss & Cross-Mot. at 8-15. Here, the main bone of contention is whether plaintiff can be said to have suffered an injury when a solicitation has yet to be issued. *Id.*; *c.f.* Pl.'s Cross-Mot. J. Admin. Rec. ("Pl.'s Cross-Mot.") at 15-16.

---

[5] Those criteria are:

> **(I)** the ability of the entity to coordinate activities carried out though the Job Corps center with activities carried out under the appropriate State plan and local plans;

> **(II)** the degree to which the vocational training that the entity proposes for the center reflects local employment opportunities in the local areas in which enrollees at the center intend to seek employment;

> **(III)** the degree to which the entity is familiar with the surrounding communities, applicable one-stop centers, and the State and region in which the center is located; and

> **(IV)** the past performance of the entity, if any, relating to operating or providing activities described in this subchapter to a Job Corps center.

29 U.S.C. § 2887(a)(2)(B)(i).

From these arguments and defendant's motion to dismiss emerge four issues for the court's resolution:

(1) Whether the court should dismiss plaintiff's protest for lack of jurisdiction on standing or ripeness grounds;

(2) Whether 29 U.S.C. § 2887(a)(2)(A) prohibits small business set-asides in procurements for the operation of Job Corps Centers;

(3) Whether FAR 19.502-1(a) requires a contracting officer to make a "predicate determination" for each procurement that setting aside that procurement is in the interest of assuring that a "fair proportion" of government contracts are awarded to small business concerns; and

(4) Whether the contracting officer's Rule of Two determination in this case is arbitrary or capricious for failing to consider the statutory factors of 29 U.S.C. § 2887(a)(2)(B)(i) or other non-statutory factors identified by plaintiff.

The court will now address these issues *seriatim.*

## II. DISCUSSION

### A. Defendant's Motion To Dismiss for Lack of Jurisdiction

As a preliminary matter, the court must address the jurisdictional questions arising in this case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (citing *Ex parte McCardle*, 7 Wall. 506, 514 (1868)). In "determining jurisdiction, a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (2011); *see also Hamlet v. United States,* 873 F.3d 1414, 1415-16 (Fed. Cir. 1989). Nonetheless, where such facts are in dispute, it is the plaintiff that bears the burden of establishing such jurisdiction by a preponderance of the evidence. See *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed.Cir.1998) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind*., 298 U.S. 178, 189 (1936)).

It is the Tucker Act, as amended by the Administrative Disputes Resolution Act ("ADRA"), Pub. L. No. 104–320, § 12, 110 Stat. 3870, 3874–76 (1996), that provides the U.S. Court of Federal Claims with "jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract . . . or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). It is uncontested that the court possesses jurisdiction to hear pre-award bid protest actions. Defendant, however, argues that this particular case is not justiciable for the following reasons. First, defendant argues that plaintiff lacks standing because plaintiff has not suffered any "competitive injury." Second**,** defendant argues that this case is not ripe for review because the Agency's decision to set aside the contract is not a final decision.

### 1.   Standing

The Constitution "divides all power conferred upon the Federal Government into 'legislative Powers,' Art. I, § 1, '[t]he executive Power,' Art. II, § 2, and '[t]he judicial Power,' Art. III, § 1." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992).   Under Article III, this judicial power is limited to actual "cases" and "controversies." *Id.*   The doctrine of standing "is an aspect of the case-or-controversy requirement," *Samsung Electronics Co., Ltd. v. Rambus, Inc.*, 523 F.3d 1374, 1378 (Fed. Cir. 2008), and is a requirement that cannot be waived by Congress.   *See Lujan*, 504 U.S. at 676-77 (holding that the doctrine of the separation of powers precludes Congress from removing the "concrete injury" requirement).   Although Congress created the Court of Federal Claims under Article I of the Constitution,[6] this court applies the same standing requirements enforced by other Federal courts created under Article III." *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359; *CW Gov't Travel, Inc. v. United States*, 46 Fed. Cl. 554, 557-58 (2000) (internal citations removed) (applying other justiciability requirements, such as ripeness) (cited in *Anderson v. United States*, 344 F.3d 1343, 1350 n. 1 (Fed. Cir. 2003)); *see also Massachusetts Bay Transp. Auth. v. United States*, 21 Cl. Ct. 252, 257-58 (1990).

"[T]he irreducible constitutional minimum of standing contains three elements"—there must be (1) an "injury in fact" that (2) bears "a causal connection between the injury and the conduct complained of" and that (3) is "likely . . . redressable by a favorable decision." *Lujan*, 560 U.S. at 560-61 (internal citations omitted).   Clearly, the element of redressability is foregone because the Tucker Act confers on this court the power to "award any relief that the court considers proper, including declaratory and injunctive relief . . ." 28 U.S.C. § 1491(b)(2).   As for injury and causality, these requirements are "framed by 28 U.S.C. § 1491(b)(1), which . . . imposes more stringent standing requirements than Article III." *Weeks Marine*, 575 F.3d at 1359.   Hence, a party that meets the Tucker Act's standing requirement presumably also satisfies the constitutional standing requirement.

Pursuant to the Tucker Act, this court has jurisdiction "to render judgment on an action by an *interested party* objecting to . . . any alleged violation of statute or regulation in connection with a procurement or proposed procurement." 28 U.S.C. § 1491(b)(1) (emphasis added).   As the language of § 1491(b)(1) suggests, only an "interested party" has standing to bring a bid protest case, although the Tucker Act itself "does not define who is encompassed by the term interested party." *Am. Fed'n of Gov't Emp. v. United States*, 258 F.3d 1294, 1299 (Fed. Cir. 2001).   In *American Federation*, the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") refused to adopt the liberal position that the ADRA gives this court jurisdiction "over any contract dispute that could have been brought under the APA," but construed the phrase "interested party" more narrowly, in accordance with the definition set forth in the Competition in Contracting Act ("CICA"), 31 U.S.C. 3551(2). *Id.* at 1301-02.   This definition limits standing to "(1) actual or prospective bidders or offerors (2) whose direct economic interest would be affected by the award of the contract or by failure to award the contract." *Id.*; *see also Sys. Application & Techs., Inc. v. United States ("SA-Tech")*, 691 F.3d 1374, 1382 (Fed. Cir. 2012). In the context of a pre-award bid protest, a plaintiff can show "direct economic interest" by simply demonstrating that it has suffered "a non-trivial competitive injury which can be

---

[6] *See* 28 U.S.C. § 171(a) (describing this court as an "Article I court").

addressed by judicial relief."[7]   The court frequently refers to such competitive injury as "prejudice."  *See Myers Investigative & Sec. Servs. v. United States*, 275 F.3d 1366, 1370 (Fed. Cir. 2002) (holding that "prejudice (or injury) is a necessary element of standing").

The term "prejudice" has sometimes engendered confusion because it is used in two very different procedural contexts.  In the first place, the question of whether a plaintiff has been "prejudiced" by the government's conduct is "a threshold jurisdictional issue" that must be addressed in order to determine whether a plaintiff has standing.  *See Myers*, 275 F.3d at 1369. Because standing is a jurisdictional requirement, the court must only consider "the impact that the alleged procurement errors had on a plaintiff's prospects for award, taking the allegations as true."  *Linc Gov't Serv.*, 96 Fed. Cl. at 695 (referring to this initial inquiry as "allegational prejudice"); *see Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003) (finding that plaintiff has standing because "[i]f [plaintiff] were successful [on the merits], the award would be set aside, and ITAC might secure it").

Nonetheless, this initial prejudice inquiry—at issue here—should not be confused with the additional Administrative Procedure Act ("APA") requirement that "due account shall be taken of the rule of prejudicial error."  5 U.S.C. § 706.  *C.f.* 28 U.S.C. § 1491(b)(4) (requiring the court, in bid protest cases, to review agency actions "pursuant to the standards set forth in section 706 of title 5").  Under this provision, a plaintiff who is successful on the merits is only entitled to a remedy if the court determines that "[the] adjudged violation of law warrants setting aside a contract award."  *Bannum, Inc. v. United States*, 404 F.3d 1346, 1357 (Fed. Cir. 2005). However, this additional inquiry is unnecessary if the court finds that all of the agency's actions are lawful.  *See Bannum*, 404 F.3d at 1357; *Info. Tech. and Applications Corp.*, 51 Fed.Cl. at 357; *Linc Gov't Serv.*, 96 Fed. Cl. at 696 (referring to this additional inquiry as "APA prejudice").

Turning to the case at hand, and taking plaintiff's allegations as true, the court finds that the plaintiff satisfies both the "actual or prospective bidder" and the "non-trivial competitive injury" elements that are required to show allegational prejudice, and therefore has standing to file this bid protest.  *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006). First, plaintiff is the incumbent contractor operating the Paul Simon JCC and would, if permitted, submit a bid for the instant procurement.  Plaintiff is therefore a "prospective bidder."  *See MCI Telecomm. Corp. v. United States*, 878 F.2d 362, 365 (Fed. Cir. 1989) (holding that a "prospective bidder" is one "expecting to submit an offer prior to the closing of the solicitation")

---

[7] As stated above, the Federal Circuit originally held that standing under the Tucker Act is "limited to (1) actual or prospective bidders or offerors (2) whose direct economic interest would be affected by the award of the contract or by the failure to award the contract."  *Am. Fed'n*, 258 F.3d at 1302.  However, in *Weeks Marine*, the Federal Circuit recognized that the requirement that a plaintiff show that its "direct economic interest would be affected by the award of the contract or by the failure to award the contract" is inappropriate in the context of pre-award bid protest because "there have been neither bids/offers, nor a contract award."  575 F.3d at 1361 (Fed. Cir. 2009) (referring to *Am. Fed'n*, 258 F.3d at 1302).  Accordingly, the *Weeks Marine* court held that in pre-award bid protests such as the instant case, a plaintiff can show prejudice by simply demonstrating that it has suffered "a non-trivial competitive injury."  *Id*. at 1362 (approving the test originally articulated in *WinStar Commc'ns, Inc. v. United States*, 41 Fed. Cl. 748, 763 (1998) for pre-award bid protests).

(cited in *Rex Servs. Corp. v. United States*, 448 F.3d 1305, 1307-08 (Fed. Cir. 2006)); *Mgmt. & Training Corp. v. United States*, 12-561C, 2013 WL 3944270 (Fed. Cl. July 25, 2013) (holding, in a companion case, that "as the incumbent contractor and prospective bidder, [Management] is an 'interested party' whose 'direct economic interest would be affected by the award of the contract'") (citing *Am. Fed'n*, 258 F.3d at 1302).  Second, the injury plaintiff alleges is the loss of opportunity to compete in the instant procurement.  This court has held repeatedly that when a party is deprived of an opportunity to submit a bid, it has suffered the "non-trivial competitive injury" required to achieve "interested party" status.  *See, e.g., Adams and Associates, Inc. v. United States*, 109 Fed. Cl. 340, 350 (2013) (another companion case against DOL, which reached the same conclusion); *Dynamic Educ. Syst., Inc. v. United States*, 109 Fed. Cl. 306, 320 (2013) (another companion case against DOL); *Assessment & Training Solutions Consulting Corp. v. United States*, 92 Fed. Cl. 722, 728 (2010); *Magnum Opus Techs., Inc. v. United States*, 94 Fed. Cl. 512, 533 (2010).

Defendant insists that a bid protester cannot possibly be an interesting party unless there has been a solicitation.  *See* Mot. Dismiss & Cross-Mot. at 13-15; Def.'s Reply at 9-10.  Nevertheless, defendant, astonishingly, cites cases that clearly are no longer good law.  Defendant principally relies on *Fire-Trol Holdings, LLC v. United States*, to the effect that "there must be 'outstanding a specific viable solicitation' before [a protestor] can establish that it is a bidder or offeror."  62 Fed. Cl. 440, 444 (2004) (quoting *Omega World Travel, Inc. v. United States*, 9 Cl. Ct. 623, 628 (1986)).  However, as plaintiff points out, the Federal Circuit in *Omega World Travel* was interpreting a jurisdictional statute that preceded the Administrative Dispute Resolution Act of 1996.  Pl.'s Opp'n to Mot. Dismiss at 21-22 (citing *Omega*, 9 Cl. Ct. at 624).  Before the passage of the ADRA, a bid protest could only be based on an implied-in-fact contract, which in turn could only arise after a solicitation had been issued.  *Omega*, 9 Cl. Ct. at 627.  The language of the ADRA, however, is much broader, contemplating jurisdiction over claims "in connection with a procurement or a proposed procurement."  Pub. L. No. 104-320, § 12(a), 110 Stat. 3874 (1996) (codified as § 1491(b)(1)).  Moreover, *Fire-Trol* itself has been superseded by the Federal Circuit's holding in *Weeks Marine*, discussed above, that a pre-award bid protester can satisfy the prejudice requirement by simply demonstrating that it an "actual or prospective bidder" who has suffered "*a non-trivial competitive injury* which can be addressed by judicial relief."  *Weeks Marine*, 575 F.3d at 1362 (emphasis added).

## 2. Ripeness

Defendant also argues that this case is not ripe for review.  Ripeness is a doctrine of justiciability that "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies."  *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967).  Determining ripeness requires the court to consider (1) whether the issues presented are "fit" for judicial decision, and (2) whether withholding judicial consideration would impose "hardship" on the parties.  *SA-Tech*, 691 F.3d at 1383-84 (citing *Abbott Labs.*, 387 U.S. at 149).  An agency decision is "fit" for judicial review only if it is "final," and a decision is "final" only if (1) it "marks 'the consummation of the agency's decision-making process,' *i.e.,* it must not be merely tentative or interlocutory," and (2) "'the action [is] one by which rights or obligations have been determined, or from which legal consequences must flow.'"  *NSK, Ltd. v. United States*, 510 F.3d 1375, 1384-85 (Fed. Cir. 2007) (quoting *Bennett v. Spear*, 520 U.S. 154, 177 (1997)).

*a.   This case is fit for review because the DOL's set-aside decision satisfies the finality requirement.*

Defendant argues that the DOL's Presolicitation Notice is not a final decision but is merely "an intermediate step of [the] procurement process . . . before a final solicitation conducting the procurement as a small-business set aside," and that DOL retains the right to reconsider its decision to set aside the procurement "at any time." Mot. Dismiss & Cross-Mot. at 8-12.  In fact, the government takes the extreme view that "[b]ecause DOL did not issue a solicitation before [Management] filed this suit, and has yet to issue one, [Management's] claims have not yet ripened." *Id*. at 10.

Defendant's categorical position that there can be no final decision unless there has been a solicitation, is contrary to statute as well as precedent.  First of all, as discussed above, the language of the Tucker Act clearly contemplates jurisdiction over bid protests beyond the context of a solicitation—28 U.S.C. § 1491(b)(1) expressly provides this court with "jurisdiction to render judgment on an action by an interested party objecting" not only "to a solicitation . . ." but also, more broadly, "*to . . . any alleged violation of statute or regulation in connection with a procurement or a proposed procurement*."  (emphasis added).  To be sure, the Tucker Act does not define the term "procurement," however the Federal Circuit has applied the definition of the term found in 41 U.S.C. § 403(2), a provision "related to the establishment of the Office of Federal Procurement Policy in the Office of Management and Budget." *Distrib. Solutions, Inc. v. United States*, 539 F.3d 1340, 1345 (Fed. Cir. 2008).  Under that definition, "procurement" broadly includes "*all stages* of the process of acquiring property or services, beginning with the process for determining a need for property or services and ending with contract completion and closeout." *Id.; see also SA-Tech*, 691 F.3d at 1381 (applying the same definition of "procurement" in the context of a pre-award bid protest).  Since "DOL's decision to designate the contract as a small business set-aside is made 'in connection with a proposed procurement,'" this court has jurisdiction. *Dynamic Educ. Sys., Inc. v. United States*, 109 Fed. Cl. 306, 320 (2013) (rejecting DOL's ripeness argument in a similar suit).

In fact, this court routinely entertains bid protests challenging pre-solicitation set-aside decisions, and has recently done so in a number of similar suits against DOL.  *See*, e.g., *Dynamic Educ. Sys., Inc. v. United States*, 109 Fed. Cl. 306, 320 (2013) (finding jurisdiction on the ground that the set-aside decision was made 'in connection with a proposed procurement," 28 U.S.C. § 1491(b)(1), and that plaintiff was alleging that the decision violated the WIA and applicable regulations and was arbitrary and capricious).  *See also Adams & Associates, Inc. v. United States*, 109 Fed. Cl. 340, 350 (2013) (finding jurisdiction on the same ground) *aff'd*, 2013-5077, 2014 WL 274507 (Fed. Cir. Jan. 27, 2014); *Mgmt. & Training Corp. v. United States*, 12-561C, 2013 WL 3944270 (Fed. Cl. July 25, 2013) (finding jurisdiction on the same ground); *Res-Care, Inc. v. United States*, 107 Fed. Cl. 136, 139 (2012) (finding jurisdiction on the same ground) *aff'd*, 735 F.3d 1384 (Fed. Cir. 2013).  The court has also heard bid protests challenging pre-solicitation set-aside decisions in a number of other cases where the Workforce Investment Act was not at issue. *See, e.g., Assessment & Training Solutions Consulting Corp. v. United States*, 92 Fed. Cl. 722, 728 (2010); *Tyler Constr. Grp. v. United States*, 83 Fed. Cl. 94, 97 (2008) (finding jurisdiction, *sub silentio*, over a bid protest action against DOL's decision to set aside for small businesses a portion of a construction project) *aff'd*, 570 F.3d 1329 (Fed. Cir. 2009).

Defendant does not cite a single case in which this court has held that a bid protest cannot be ripe before a solicitation has been issued.  In fact, defendant repeatedly supports its position by plucking quotes from cases that are clearly inapposite.  For instance, defendant relies on a statement in *United States Association of Importers and Textiles & Apparel v. United States* ("*USAIT*") that a "threshold determination" by the agency is not a final decision.  Mot. Dismiss & Cross-Mot. at 12 (citing *USAIT*, 413 F.3d 1344, 1350 (2012).  Although this proposition is correct in its own right, the facts in *USAIT* are not at all analogous to the instant case.  At issue in *USAIT* was the interagency Committee for the Implementation of Textile Agreements' acceptance of several petitions under the newly published procedures for requesting consultations with China under the World Trade Organization's Safeguard provision.[8]  The Federal Circuit found that simply entertaining certain petitions was merely a threshold decision and accordingly found that the case lacked finality.  In contrast, the agency action at issue in the instant case is not a mere petition but an actual decision to set aside a procurement, which has been published by DOL in the Presolicitation Notice, and has the immediate effect of precluding plaintiff from competing.  Moreover, as the Federal Circuit has recognized, the statutory context of the antidumping, subsidies and safeguards is very different from government procurement. *See SA-Tech*, 691 F.3d at 1385.

Finally, the fact that DOL could, "theoretically," reverse its decision to set aside the procurement of the Paul Simon JCC does not render this case unripe.  For instance, in *SA-Tech*, the Federal Circuit rejected the Army's argument that it could, theoretically, reverse its decision to pursue corrective action.  691 F.4d at 1384 (observing that "[t]he Army memorialized its decision to take corrective action in a letter to the General Accountability Office).  Here, as in *SA-Tech*, a formal decision has been made and publicly announced in the Presolicitation Notice.  Moreover, ETA announced in the Presolicitation Notice that a "Small Business Set Aside Request for Proposal" would be available October 26, 2012, and that offerors for this small business set-aside would be invited to attend a "Pre-Proposal conference" on October 23.  Tab 7, AR 61.  Thus, ETA's own actions demonstrate that it does not consider the set-aside decision merely "tentative" or "interlocutory."  Additionally, defendant's insistence that the set-aside is interlocutory is at odds with its posture in this litigation, that because the Rule of Two is satisfied, the agency has no choice but to set aside the Paul Simon JCC.  *See* Mot. Dismiss & Cross-Mot. At 11-13 (characterizing the set-aside decision as "academic"); *Id.* at 27-28 (arguing that the Rule of Two was properly applied and that the Paul Simon JCC satisfied both requirements of the Rule of Two); *id.* at 28-32 (arguing that the Rule of Two is "mandatory").

### b.  *Plaintiff satisfies the hardship requirement.*

In considering whether a dispute is ripe, the court must also consider whether failure to review the case would impose a "hardship" on plaintiff.  *SA-Tech*, 691 F.3d at 1383-84. "Withholding court consideration of an action causes hardship to the plaintiff where the complained-of conduct has an 'immediate and substantial impact' on the plaintiff."  *Caraco Pharm. Labs., Ltd. v. Forest Labs., Inc.*, 527 F.3d 1278, 1295 (Fed. Cir. 2008) (quoting *Gardner*

---

[8] "The Agreement on Safeguards . . . sets forth the rules and application of safeguard measures pursuant to Article XIX of GATT [General Agreement on Tariffs and Trade] 1994.  Safeguard measures are defined as 'emergency' actions with respect to increased imports of particular products, where such imports have caused or threaten to cause serious injury to the importing Member's domestic injury."  *See* Agreement on Safeguards, http://www.wto.org/english/tratop_e/safeg_e/safeint.htm.

*v. Toilet Goods Ass'n*, 387 U.S. 167, 171 (1967)).   The hardship requirement for ripeness requires a lesser showing than that required for injunctive relief.  *SA-Tech*, 691 F.3d at 1385.

Citing *FTC v. Standard Oil Co.*, defendant characterizes plaintiff's inability to compete due to the set-aside decision as a "business uncertainty" that is not cognizable as "hardship" for purposes of a ripeness inquiry.  Mot. Dismiss & Cross-Mot. at 12 (citing *FTC v. Standard Oil*, 449 U.S. 232, 241 (1980)).   However, *Standard Oil* is inapposite.  In that case, the Court held that the mere commencement of an investigation had no "legal force" and imposed no burden on plaintiff other than the cost of responding to charges against it.   In contrast, the set-aside decision directly precludes plaintiff from submitting a bid, and therefore imposes an "immediate and substantial hardship" on plaintiff.   Accordingly, the court denies defendant's motion to dismiss for lack of ripeness.

## B. Cross-motions for Judgment on the Administrative Record

### 1.   Applicable Legal Standards

In a bid protest, this court does not review the agency's challenged action *de novo* but applies the standards set forth in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.  28 U.S.C. § 1491(b)(4).   Specifically, this court must determine whether the challenged agency action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1350 (Fed. Cir. 2004).  This standard of review is "highly deferential.  [It] requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000).   The court is not empowered to substitute its own judgment for that of the agency.  *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971).   Accordingly, plaintiff bears a "heavy burden" and can only prevail by demonstrating that DOL committed a "clear and prejudicial" violation of applicable statutes or regulations or by showing that DOL's decision to set aside the procurement "had no rational basis."  *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1333 (Fed. Cir. 2001).

When considering RCFC Rule 52.1 cross-motions for judgment on the administrative record, the court must determine "whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record."  *A & D Fire Prot., Inc*. v. *United States*, 72 Fed. Cl. 126, 131 (2006) (citing *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005)).   In contrast to RCFC Rule 56, the existence of genuine issues of material fact does not necessarily preclude a judgment on the administrative record, because the resolutions of these cross-motions is "akin to an expedited trial on the paper record."  *L-3 Global Commc'ns Solutions, Inc. v. United States*, 82 Fed. Cl. 604, 608 (2008).

### 2.   Small Business Set Asides Are Not Foreclosed Under the WIA

The court begins by addressing plaintiff's primary contention in this bid protest—that the Workforce Investment Act expressly prohibits small business set-asides in JCC procurements. To review, the relevant portion of WIA, codified at 29 U.S.C. § 2887(a)(2)(A), provides:

> Except as provided in subsections (a) through (c) of section 3304 of Title 41, the Secretary [of Labor] shall select *on a competitive basis* an entity to operate a Job Corps center and entities to provide activities described in this subchapter to the Job Corps center.

*Id.* (emphasis added).  This provision of the WIA includes a direct statutory reference to CICA, which requires "full and open competition" in federal procurement "except as provided in sections 3303, 3304(a), and 3305 of this title and except in the case of procurement procedures otherwise expressly authorized" in another source of law.  41 U.S.C. § 3301(a).  Undisputedly, a small business set-aside does not fall within any of the exceptions codified at 41 U.S.C § 3304(a)-(c), which pertain to instances in which contracts are awarded without any competition at all, such as sole source contracts.[9]  However, the parties disagree as to whether the use of a small business set-aside is consistent with the "competitive basis" requirement enumerated in § 2887(a)(2)(A).

Plaintiff's argument can be summarized as follows.  First, plaintiff points out that § 2887(a)(2)(A) of the WIA requires that JCC operators be selected on a "competitive basis."  Pl.'s Cross-Mot. at 23-25.  Second, plaintiff argues that the phrase "competitive basis" is synonymous with the principle of "full and open competition," which is mandated by CICA in 41 U.S.C. § 3301(a).  According to plaintiff, it is appropriate to refer to CICA in interpreting "competitive basis" because the "competitive basis" provision of WIA includes an explicit statutory reference to CICA—namely the reference to § 3304(a)-(c).  *Id.*  Third, plaintiff points out that the exceptions to the competitive basis requirement found in § 2887(a)(2)(A) do not include small business set-asides, but encompass only instances where sole source procurements are required or situations of "unusual or compelling urgency."  *Id.* (discussing 41 U.S.C. § 3304(a)-(c)).  Finally, plaintiff concludes by arguing, on the basis of the negative implication canon (*expressio unius est exclusio alterius*), that exceptions to CICA's "full and open competition" requirement other than § 3304(a)-(c) are precluded.  The CICA exception for set-asides—codified at § 3303—is not expressly included, therefore it must be excluded.  *Id.*

The statutory question raised by plaintiff has recently been resolved by the Federal Circuit.  *See Res-Care, Inc. v. United States*, 735 F.3d 1384 (2013).  In that case, Res-Care, Inc. filed a bid protest challenging the DOL's decision to set aside competition to operate the Blue Ridge Job Corps Center.  Like the plaintiff in this case, Res-Care, the incumbent operator of Blue Ridge, argued that "competitive basis" should be interpreted to mean competition among all possible competitors unless one of the provisions in §§ 3304(a)-(c) apply.  As the Federal Circuit held, the critical premise in plaintiff's syllogism—that "competitive basis" means competition among all possible competitors—is contrary to the "plain language" of the WIA.  *Id.* at 1389.  The plain, ordinary meaning of "competition" is "rivalry between two or more equally matched individuals or forces . . ."  *Res-Care*, 735 F.3d at 1388; *see also Adams & Associates, Inc. v. United States*, 2013-5077, 2014 WL 274507, at \*4 (Fed. Cir. Jan. 27, 2014) (reaching the same conclusion as *Res-Care*).

---

[9] The provision allowing set-asides is codified at 41 U.S.C. § 3303.  In contrast, section 3304(a)-(c) sets forth several circumstances in which agencies may use "noncompetitive procedures"— for instance, when a property or service is only available from one particular source, or in situations of "unusual or compelling urgency," or if intellectual property laws or international agreements compel acquisition from a particular source, etc.

Moreover, as the Federal Circuit pointed out, plaintiff's attempt to equate "competitive basis" with "free and open competition" is misguided. "Congress did not borrow the 'full and open competition' phrase from CICA" but instead required that competition occur "on a competitive basis." *Res-Care*, 735 F.3d at 1389. The court reasoned that, "we must presume that Congress understood the difference between expressions of a particularized form of competition, *i.e.*, 'full and open,' versus the broader notion represented by 'competitive basis.' Had Congress intended JCC contractors to be selected by 'full and open competition,' it knew how to use those words and could have done so." *Id*.

Finally, the Federal Circuit's view of "competitive basis" is consistent with the language of CICA. In particular, the phrase "competitive basis" is very similar to the phrase "competitive procedures" that is used in the CICA exception allowing small business set-asides, 41 U.S.C. § 3303(b). Since § 3303(b) requires agencies conducting set-asides to use "competitive procedures," it is clear that set-asides are, in a sense, "competitive,"[10] in contrast to procurements covered by § 3304(a)-(c) (the exception set forth in § 2887(a)(2)(A)), which applies only to procurements carried out using "non-competitive procedures." *See* § 3304.

For the foregoing reasons, this court holds that defendant's set aside does not violate the language of 29 U.S.C. § 2887(a)(2)(A).[11]

### 3. The Contracting Officer Is Not Required To Make a "Predicate Determination" As to "Fair Proportion"

But plaintiff's challenge does not rely entirely on its interpretation of the WIA. In the alternative, plaintiff argues that the contracting officer violated 15 U.S.C. § 644(a) (the "fair proportion" provision) and FAR 19.502-1(a) (*i.e.*, the "Rule of Two"), by setting aside the procurement without making a "predicate determination" as to whether a set-aside would be in the interest of assuring that a "fair proportion" of contracts go to small business concerns. Compl. ¶¶ 100-113, Pl.'s Cross-Mot. at 30-32.

The fair proportion provision provides, in relevant part, that

small-business concerns . . . shall receive any award or contract . . . as to which it is determined by the [Small Business] Administration and the contracting procurement or disposal agency . . . to be in the interest of assuring that *a fair proportion* of the total . . .

---

[10] As stated above, CICA § 3301(a) requires "*full and open competition*" unless the exceptions listed in §§ 3303-05 apply. Section 3303(b), in turn, permits agencies to "provide for the procurement of property or services covered by section 3301 of this title using *competitive procedures*, but excluding other than small business concerns. . . ." (emphasis added).

[11] Plaintiff also suggests, less plausibly, that the requirement of a "competitive basis" "refers back to the § 2887(a)(1)(A) universe of entities eligible to run a Job Corps center," and that "competitive basis" means free and open competition among these entities. Pl.'s Cross-Mot. at 21-23. However, as defendant points out, this provision only states that the award must be made to one of those entities; it does not say that any of the numerated entities must be eligible to compete in a given procurement. Def.'s Cross-Mot. at 17. Moreover, this argument is defeated by the Federal Circuit's holding that "competitive basis" does not require full and open competition. *See Res Care*, 735 F.3d at 1388, n. 5.

- 14 -

contracts for . . . services for the Government in each industry category are placed with small business concerns. . . .  These determinations may be made for individual awards or contracts or for classes of awards or contracts.

15 U.S.C. § 644(a).

Section 644 is implemented in part by FAR 19.502-1 ("Requirements for setting aside acquisitions") and FAR 19.502-2(b) (the Rule of Two).  FAR 19.502-1 provides the following:

> **The contracting officer** shall set aside an individual acquisition or class of acquisitions for competition when—
>
> (1) It is determined to be in the interest of maintaining or mobilizing the Nation's full productive capacity, war or national defense programs; or
>
> (2) Assuring that a fair proportion of Government contracts in each industry category is placed with small business concerns; **and** the circumstances described in 19.502-2 [*i.e.*, the Rule of Two] . . . exist.

FAR 19.502-1(a) (emphasis added).  The Rule of Two, in turn provides, in relevant part, that

> The contracting officer shall set aside any acquisition over $150,000 for small business participation when there is a reasonable expectation that:
>
> (1) Offers will be obtained from at least two responsible small business concerns . . . ; and
>
> (2) Award will be made at fair market prices.

FAR § 19.502-2(b).

The parties agree that the "fair proportion" determination described in § 644(a) must be made at some level, but disagree as to whether FAR 19.502-1(a)(2) requires the contracting officer to make that determination in each procurement as a "predicate" to setting aside the procurement.  The plaintiff argues that the conjunction "and" in subheading (2) indicates that the "assuring" clause before the conjunction and the "circumstances described . . ." clause after the conjunction are two separate requirements that must be met by the contracting officer in order for the contracting officer to set aside a procurement.  Accordingly, the plaintiff concludes that the language of FAR 19.502-1(a)(2) mandates that the contracting officer—not some senior policy official—determine *in each individual procurement* whether that particular procurement is necessary to carrying out the "fair proportion" requirement set out in 15 U.S.C. § 644(a).  *See* Compl. ¶¶ 100-113, Pl.'s Cross-Mot. at 30-32.  The defendant does not directly address the meaning of the word "and" in FAR 19.502-1(a)(2),[12] but argues that plaintiff's interpretation is incorrect in light of other provisions in § 644.

---

[12] This dispute calls to mind the oft-quoted statement by President Clinton before the grand jury: "it depends on what the meaning of the word 'is' is."

- 15 -

The issue presented by the plaintiff is one of statutory interpretation.  Principles of statutory interpretation dictate that the court begin its analysis with the text of the regulation at issue because, if the terms of the regulation are unambiguous, the plain language of a regulation is controlling.  *See Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009); *Shoshone Indian Tribe of the Wind River Reservation v. United States*, 364 F.3d 1339, 1345 (Fed. Cir. 2004).  If the language is clear, "the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms."  *Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.*, 530 U.S. 1, 6 (2000) (internal quotation marks omitted).

Clearly, the opening phrase of FAR 19.502-1(a)(2) ("the contracting officer shall . . .) requires the contracting officer to set aside a procurement if the requirement or requirements of subheading (2) are met.  The issue here is whether subheading (2) contains only a single requirement or two separate requirements that must be met by the contracting officer.  The Federal Circuit recently addressed the meaning of FAR 19.502-1(a)(2) in a companion case.  *See Adams & Associates, Inc. v. United States*, 2013-5077, 2014 WL 274507 (Fed. Cir. Jan. 27, 2014).  The plaintiff in *Adams*, like Management, brought a bid protest in this court, challenging DOL's decision to set aside a procurement for the operation of Job Corps centers.  In *Adams*, the Federal Circuit held that plaintiffs' "formulation [of FAR 19.502-1(a)(2)] is refuted by the plain language of the Regulation," and can only be reached by "rephrase[ing]" the regulation.  *Id.* at 7.

Like the Federal Circuit, this court finds that plaintiff's interpretation of FAR 19.502-1(a) is flawed for several reasons.  First, the use of the progressive tense ("assuring") in the clause before the conjunction in FAR 19.502-1(a)(2) calls into question the plaintiff's argument that both the clause preceding the conjunction and the clause following the conjunction are operative.  Specifically, the use of the progressive tense is not grammatically parallel to the other clauses in FAR 19.502-1(a)(2) that obviously do express a condition—i.e., "[t]he contracting officer shall set aside . . . when . . . *it is determined* to be in the interest" and "[t]he contracting officer shall set aside *when* . . . the circumstances described . . . *are met*."  *C.f.* "[t]he contracting officer shall set aside . . . . *when* . . . *assuring* that a fair proportion. . . ."

Second, the phrase "assuring that a fair proportion . . ." also appears, with the exact same wording, in 15 U.S.C. § 644(a), which states more broadly that the determination is to be made "by the [Small Business] Administration and the contracting procurement or disposal agency."  *See Adams*, 2014 WL 274507, at *7 (finding that plaintiff's "formulation . . . . finds no support in the Small Business Act, from which the 'fair proportion' language originated").  The use of that same language in FAR 19.502-1(a)(2) appears to be a sloppy backward reference to the overall statutory goal of promoting small businesses, which is advanced by applying the "Rule of Two."  In light of the grammar and structure of FAR 19.502-1(a), the "assuring" clause is best understood as a prefatory clause, which "announces a purpose but does not limit or expand the scope" of the operative clause that follows.  *D.C. v. Heller*, 554 U.S. 570, 578 (2008) (analyzing the syntax of the Second Amendment).  Additionally, even if the court were to find that FAR 19.502-1(a)(2) does in fact contain two express conditions, the provision does not explicitly specify that the contracting officer must be the person who should do the "assuring" or who should determine that "the circumstances described in 19.502-2" are met.

Finally, as the Federal Circuit observed, "the plain language of [§644] repudiates [the plaintiff's] suggestion that the 'fair proportion' determination is part of a two-part process executed by a contracting officer.  There is no indication in the Small Business Act that the . . . determination must be made on a contract-specific basis."  *Adams*, 2014 WL 274507, at *7.  In

fact, plaintiff's position that the contracting officer must make a "predicate determination" conflicts with the applicable federal statute, which states more broadly that the determination is to be made "by the [Small Business] Administration and the contracting procurement or disposal agency." 15 U.S.C. § 644(a). Moreover, as defendant points out, other subsections of § 644 demonstrate that the "fair proportion" determination is a policy decision to be made by a senior official, not the contracting officer. For instance, subsection (g) of § 644 calls on the President to "annually establish Government-wide goals for procurement contracts awarded to small business concerns . . . not less than 23 percent of the total value of all prime contract awards for each fiscal year." § 644(g)(1)(A)(i). Subsection (g) also requires each agency to set "an annual goal that presents, for that agency, a maximum practicable opportunity for small business concerns . . ." § 644(g)(1)(B). Moreover, subsection (h) requires each agency to submit an annual report to Congress, the President, and the public stating whether it has achieved its goals, and if not, "any justifications for a failure to achieve such goals." § 644(h)(1). These provisions call for broad, agency-wide decisions and are clearly at odds with plaintiff's argument that FAR 19.502-1(a)(2) requires the contracting officer to make a predicate determination for every single procurement.

Applying *Adams*, the court finds that the DOL's fair proportion determination was not arbitrary and capricious or contrary to law.

### 4. The Contracting Officer's Rule of Two Determination Was Not Arbitrary or Capricious

Plaintiff's final argument is that ETA acted arbitrarily and capriciously in its application of the Rule of Two because the contracting officer failed to give proper consideration to the selection criteria listed in 29 U.S.C. § 2887(a)(2)(B)(i), as well as certain other non-statutory criteria that the ETA had used in the past.[13]

The "Rule of Two," as stated above, requires the contracting officer to "set aside any acquisition over $150,000 for small business participation when there is a *reasonable expectation* that: (1) Offers will be obtained from at least two responsible small business concerns . . . ; and (2) Award will be made at fair market prices." FAR § 19.502-2(b) (emphasis added). The four statutory requirements listed in the WIA, 28 U.S.C. § 2887(a)(2)(B)(i), are quoted in full above.

To begin with, the decision to set aside a solicitation "is a matter of business judgment within the contracting officer's discretion and, as such, must be upheld unless the Court finds the decision to be arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law." *Benchmade Knife Co. v. United States*, 79 Fed. Cl. 731, 738 (2007) (internal quotation

---

[13] Plaintiff also argues that the Rule of Two is not mandatory because the contracting officer must make a discretionary "predicate determination" that a set aside is in the interest of assuring that a "fair proportion" of contracts go to small business concerns. The court has already considered and rejected this argument in the previous section. Moreover, this court has consistently held that the Rule of Two is mandatory. *See, e.g., Mgmt. & Training Corp. v. United States*, 12-561C, 2013 WL 3944270 (Fed. Cl. July 25, 2013); *Benchmade Knife Co. v. US*, 79 Fed. Cl. 731, 737-38 (2007). *See also* the Comptroller General's statement in *Delex Sys., Inc.*, B-499493, 2008 WL 4570636 (Comp. Gen. Oct. 8, 2008), at *5.

omitted); *see also Dynamic Educ. Sys., Inc.*, 109 Fed. Cl. at 326; *Adams and Associates, Inc. v. United States*, 109 Fed. Cl. 340, 356 (2013). This standard requires only that the agency's decision be supported by a rational basis. 28 U.S.C. § 1491(b)(4) (incorporating 5 U.S.C. § 706); *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1350–51 (Fed. Cir. 2004). Moreover, although "the assessment must be based on sufficient facts so as to establish its reasonableness," no "particular method of assessing the availability of small businesses" is required. *Gear Wizzard, Inc. v. United States*, 99 Fed. Cl. 266, 282-83 (2011) (quoting Rochester Optical Mfg. Co., B–292247 et al., 2003 WL 21884877, at *3 (Comp. Gen. Aug. 6, 2003)).

### a. DOL Reasonably Expected To Receive Offers from At Least Two Responsible Small Business Concerns

Plaintiff contends that DOL acted arbitrarily and capriciously by finding that three of the respondents to the RFI were capable without fully considering all the statutory and non-statutory criteria listed above, including past performance and capacity to operate additional JCCs. The contracting officer applied the twelve criteria included in the RFI and found that three of the four small businesses that applied were responsible. However, as the plaintiff observes, the contracting officer's primary basis for its conclusion is that all three small businesses are currently operating or have recently operated another JCC. Pl.'s Reply at 35 (citing AR tab 6 at 42-44). Moreover, the contracting officer stated that she had a "reasonable expectation that [the] award [would] be made at fair market price" because all three companies had been found capable and would be submitting proposals in a competitive environment. *Id.* (citing AR tab 6 at 42). Plaintiff argues that the contracting officer did not consider the higher overhead rates for small businesses, as well as the performance rankings of the three small businesses who responded to the RFI. *Id.*

Plaintiff's approach is flawed because it "conflates a set-aside determination with a responsibility determination made pursuant to FAR § 9.1041." *Adams*, 2014 WL 274507, at *8. As defendant points out, the statutory criteria plaintiff refers to are to be considered at the award stage; there is no requirement that they be considered at the set-aside stage. 29 U.S.C. § 2887(a)(2)(B)(i) (stating that "In *selecting* an entity to operate a Job Corps center, the Secretary shall consider . . .") (emphasis added); *see Dynamic Educ. Sys.*, 109 Fed. Cl. at 327 ("it is not required or practical at this [set-aside] stage . . . for the contracting officer to conduct a full responsibility evaluation"); *see also Adams*, 2014 WL 274507, at *8. The Rule of Two only requires that the contracting officer have a "*reasonable expectation*" that at least two responsible small businesses will be able to make offers at fair market prices.

Additionally, the contracting officer is under no obligation to award the procurement to any of the RFI respondents. *Mgmt. & Training Corp. v. United States*, 12-561C, 2013 WL 3944270, at *12 (Fed. Cl. July 25, 2013). Should the contracting officer eventually find that none of the offers made by small businesses in response to the solicitation are responsible, then FAR § 19.502-2(a) requires that "the set-aside be withdrawn and . . . be resolicited on an unrestricted basis." As the court has observed, "[t]he threshold for meeting the criteria of the Rule of Two is purposefully low and is counterbalanced by FAR provisions that provide direction in the event of a failed set-aside." *Dynamic Educ. Sys.*, 109 Fed. Cl. at 328.

- 18 -

Finally, the court finds that the ETA's methodology in past set-aside decisions is irrelevant in this case; the only issue before the court is whether the ETA had a rational basis for this particular set-aside.   The matrix in the administrative record shows that the contracting officer applied all twelve criteria from the RFI, and the fact that the contracting officer excluded one of the small business concerns shows that the contracting officer took the criteria seriously. *See* AR tab 6 at 42-44.

     *b.  DOL Reasonably Expected an Award To Be Made at Fair Market Prices*

Plaintiff argues that the contracting officer's determination that an award could be made to a small business concern at fair market price lacks a rational basis because the contracting officer failed to consider small business concerns' higher indirect cost rates.  Plaintiff also argues that the contracting officer acted irrationally in basing her expectation that there would be at least two responsible bidders competing for the contract.

Plaintiff, however, confuses fair market price with lowest possible price. The Rule of Two only requires "fair market prices," not lowest cost.  *See* FAR 19.001.  In fact, the reason Congress passed the Small Business Act was to favor small businesses, which are presumably unable to compete purely on the basis of price.[14]  Accordingly, plaintiff's evidence that larger businesses provide better value to the ETA is better directed at Congress, not this court. Moreover, the court finds that the contracting officer's reliance on expected competition among responsible bidders is reasonable in light of the fact that the applicable criterion is "*fair* market price," rather than lowest price.  *Mgmt. & Training Corp. v. United States*, 12-561C, 2013 WL 3944270 (Fed. Cl. July 25, 2013) ("[t]he most natural method of forming a reasonable expectation that an award will be made at a fair market price is to rely on a contracting officer's expectation of competitive bidding") (citing Walden Sec., B–407022, 2012 WL 4903367, at *5 (Comp.Gen. Oct. 10, 2012)).

For the foregoing reasons, the court finds that the defendant's Rule of Two determination was not arbitrary or capricious.

### III. CONCLUSION

For the reasons set forth above, defendant's MOTION to dismiss under RCFC Rule 12(b)(1) is DENIED, defendant's CROSS-MOTION for judgment on the administrative record under RCFC Rule 52.1 is GRANTED, and plaintiffs' CROSS-MOTION for judgment on the administrative record is DENIED.  Failing to demonstrate any possibility of success on the merits, plaintiff's MOTION for injunctive relief is likewise DENIED.  The Clerk is hereby directed to take the necessary steps to dismiss this matter.

### IT IS SO ORDERED.

*s/ Lawrence J. Block*

Lawrence J. Block
Judge

---

[14]  Congress passed the Small Business Act in 1953 to "aid, counsel, assist, and protect, insofar as possible, the interests of small-business concerns ...." 15 U.S.C. § 631(a).